**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 07-20136-CIV-SEITZ/O'SULLIVAN

WALTER INTERNATIONAL PRODUCTIONS,
INC., *et al.*,
          Plaintiffs,

v.

WALTER MERCADO SALINAS, *et al.*,

                                                      **CORRECTED**

          Defendants.

_____

Members of the Jury:

          I will now explain to you the rules of law that you must follow and apply in deciding this

case.

          When I have finished you will hear counsels' closing argument.  Once counsel have

completed their arguments, I will instruct you to go to the jury room and begin your

discussions–what we call your deliberations.

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

In this case there are two individuals involved, Guillermo Bakula and Walter Mercado-Salinas. There is also one corporate party related to Mr. Mercado, namely Astromundo, Inc. and there are six corporate plaintiffs related to Mr. Bakula, namely: (1) Walter International Productions, Inc., (2) Watervision, Inc., (3) Waltervision Productions, Inc., (4) Walter Mercado Radio Productions, Inc., (5) Bart Enterprises International, Ltd., and (6) Walter Mercado Enterprises Corp. In these instructions these six Bakula related corporations shall be jointly referred to as the "Bart Group."

The fact that corporations are involved as a parties must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company. When used in these instructions the term "person" shall refer to both individuals and corporations.

2

In your deliberations, you should consider only the evidence--that is, the testimony of the witnesses, the exhibits, and the factual stipulations I have admitted in the record--but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

Now, in saying that you must <u>consider</u> all of the evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.  Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness' testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence tending to prove that a witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

In this case it is the responsibility of both sides to prove every essential part of their claims by a "greater weight of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "greater weight of the evidence" simply means an amount of evidence that is enough to persuade you that Bakula/Bart Group's claims or Mercado/Astromundo's claims are more likely true than not true.

When, as in this case, more than one claim is involved, you should consider each claim separately; but in deciding whether a fact has been proven by a greater weight of the evidence, you may consider the testimony of all of the witnesses and evidence presented, regardless of who may have produced the witnesses or evidence.

If the proof fails to establish any essential part of Bakula/Bart Group's claims by a greater weight of the evidence, you should find for Mercado/Astromundo as to that claim. Likewise, if the proof fails to establish any essential part of Mercado/Astromundo's claims by a greater weight of the evidence, you should find for Bakula/Bart Group as to Mercado/Astromundo's claim.

As I informed you, this case is being presented in two parts.  In this first part of the case, there are three claims for your consideration: there are two breach of contract claims and a breach of fiduciary duty claim.

On the first two contract claims each side asserts that the other side breached the 1995 Agreement.  The 1995 Agreement imposed obligations on Bart and its assignee corporations, the Bart Group, and on Mercado.  In this Agreement, in exchange for the use of Mr. Mercado's name, image, and likeness, as well as his performance as a talent and his provision of media content, Bart and the Bart Group had the obligation to pay Mercado consistent with the terms of paragraph 6(c) and paragraph 10 of the 1995 Agreement. In order to prevail on a claim for breach of contract, each party making the claim must establish by the greater weight of the evidence that the other side failed to perform an obligation required by the 1995 Agreement.

On its breach of the 1995 Agreement claim, the Bart Group companies assert that Mercado breached the 1995 Agreement by failing to properly terminate the Agreement, by failing to perform under the Agreement, including failing to continue to produce materials as required by the 1995 Agreement, and by seeking new exclusive representation in violation of the terms of the Agreement.

On Mercado's breach of the 1995 Agreement claim, Mercado asserts that Bakula and the Bart Group breached the 1995 Agreement by failing to pay Mercado what he was owed under the Agreement, specifically the compensation due under paragraph 6(c) and by failing to indemnify Mercado for the Hematite damages  under paragraph 10 of the Agreement.

As to his second claim, Mercado asserts that Bart Enterprises International, Ltd. breached a fiduciary duty owed to Mercado.  This is a separate claim from the breach of contract claim.

You should consider each of these claims separately.  I will now instruct you in the law that applies to each of these claims.

As to the breach of the 1995 Agreement claims, you are instructed, in this case, as a matter of law, that the 1995 Agreement entered into by Bart Enterprises International, Ltd. and Walter Mercado-Salinas was a valid contract.

Furthermore, you are instructed, in this case, as a matter of law, that the 1995 Agreement authorized Bart Enterprises International, Ltd. to assign it rights under the 1995 Agreement to its affiliated companies: (1) Walter International Productions, Inc., (2) Watervision, Inc., (3) Waltervision Productions, Inc., (4) Walter Mercado Radio Productions, Inc., and (5) Walter Mercado Enterprises, Corp. and that these assignments are valid and authorized under the 1995 Agreement.

Therefore, there is no issue that the 1995 Agreement was a binding contract or that the assignments were valid.

8

As you consider the breach of contract claims, you are instructed that the law requires "good faith" in the performance of a contract. This obligation does not vary the terms of a contract but is considered to be consistent with the contract's intentions in achieving the goals of each party as set out in the contract. Pursuant to this duty of good faith, a party to a contract is required to perform its contractual duties in a manner that will protect the other party's reasonable expectations under the contract. The duty of good faith is as binding as the written terms of the contract.

Contractual provisions should be interpreted and read together, and harmonized, so as to determine the true intent of the parties.  Additionally, the terms of a written contract should be strictly construed so as to achieve the intent of the parties.

In evaluating each side's performance of the 1995 Agreement, if you find that one side or the other side or both sides breached the Agreement, you will have to consider whether the breach was a "material breach." A material breach occurs if an unmet obligation was an essential obligation under the 1995 Agreement. In other words, the unmet obligation must be the reason why the party entered into the Agreement in the first place. If the unmet obligation was not the reason, or motive, for entering into the Agreement then the breach was not material. If a breach is a material breach, the aggrieved party may sue for damages and may also rescind, or annul, the contract. A breach of a non-essential or accessory obligation entitles the aggrieved party to sue for damages, but does not entitle the aggrieved party to terminate the contract.

By the terms of the 1995 Agreement, if the Bart Group materially breached the Agreement, paragraph 12(a)(ii) of the Agreement permitted Mercado to terminate the 1995 Agreement if the breach remained uncured for a period of 10 days following written notice of the breach. Notwithstanding anything in the 1995 Agreement to the contrary, paragraph 12(a)(iii) of the Agreement gave Mercado the option to declare the Agreement null and void, meaning terminated, if the Bart Group failed to make any of the payments in paragraph 6(c) within 60 days from the due date, provided Mercado gave Bakula/Bart Group written notice at least 15 days prior to such date of termination and Bart Group failed to cure the non-payment within the 15 days or otherwise justify its failure to make such payments. I instruct you as a matter of law that failure to pay as required under paragraph 6(c) and its subsections and failure to cure after notice constitute a material breach.

Because Bart Enterprises International, Ltd. was not an existing corporation in 2006, you are instructed that, as a matter of law, the notice required by paragraph 14 of the 1995 Agreement

11

could be provided to Mr. Bakula at the address that he furnished. You are further instructed that

Bart Enterprises International, Ltd. was reinstated in 2007 and therefore is a proper party in this

case.

We first turn to the Bart Group's breach of contract claim against Mercado.

The Bart Group claims that Mercado breached the 1995 Agreement by terminating the 1995 Agreement without justification, by entering into a new contract with another exclusive agent, and thereafter failing to perform his obligations under the 1995 Agreement.

The Bart Group claims that the Agreement was improperly terminated because there was no breach by the Bart Group and because Mercado failed to give written notice that the Bart Group was in breach of the Agreement and time for the Bart Group to cure the breach. The 1995 Agreement has specific provisions regarding a material breach and a payment breach and a procedure for notice of termination for both types of breach. For a payment breach under paragraph 6(c), paragraph 12(a)(iii) of the 1995 Agreement requires that Mercado give written notice that Bakula/Bart Group has failed to pay compensation within 60 days of the date due and 15 days to make the payment or justify the failure to make the payment. If Bakula/Bart Group fails to make payment or justify non-payment in that 15 days, Mercado/Astromundo may properly terminate the 1995 Agreement. For a material breach, paragraph 12(a)(ii) of the 1995 Agreement requires written notice of a material breach and failure to cure the breach within 10 days, after written notice. The Bart Group asserts that these provisions were not followed by Mercado and thus Mercado breached the 1995 Agreement. While the 1995 Agreement does not require that the notice include any specific details or language, any notice must be sufficient to give Bakula/Bart Group enough information that it will be able to cure the failure to perform.

The Bart Group also contends that Mercado breached the 1995 Agreement by entering into a contract with a third party to have the third party market Mercado's name, image, and likeness.

13

Finally, the Bart Group contends that Mercado breached the 1995 Agreement because Mercado failed to perform his obligations under the Agreement after Mercado improperly terminated the Agreement. If Mercado did not properly terminate the Agreement, then Mercado remained obligated to continue to perform under the 1995 Agreement.

In order for Bart Group to prevail on its breach of the 1995 Agreement claim, Bart Group must prove, by the greater weight of the evidence, the following facts:

First:          That the Bart Group performed all of their obligations under paragraph 10 of the Agreement to indemnify Mercado.

Second:     If you find that Bart Group has not proven by the greater weight of the evidence that it did not breach paragraph 10, then you must decide if it has proven that such breach was not material to the 1995 Agreement.

Third:       If you find that the breach was material, then you must consider whether the Bart Group has proven by the greater weight of the evidence that Mercado/Astromundo did not give the Bart Group written notice of the material breach and 10 days to cure the breach.

Fourth:      The Bart Group must also prove by a greater weight of the evidence that the Bart Group made all payments due under paragraph 6(c). If you find that the Bart Group failed to make payments under paragraph 6(c) within 60 days of the date they were due, then you must consider whether the Bart Group has proven by the greater weight of the evidence that Mercado did not give Bakula/Bart Group written notice of non-payment, at least 15 days prior to termination of the 1995 Agreement, to permit the Bart Group to cure the non-payment or otherwise justify its failure to make payments.

14

On the verdict form that has been provided for your convenience, which I will explain in a moment, there will be questions where you can reflect your unanimous finding as to whether the Bart Group has proven the facts they must prove by the greater weight of the evidence on their breach of the 1995 Agreement claim.

We now turn to Mercado's first breach of contract claim.

Mercado claims that the Bart Group breached the 1995 Agreement in two ways: (1) by failing to make compensation payments when due and owing to Mercado, as required by paragraph 6(c) of the 1995 Agreement and (2) by failing to indemnify Mercado for the hematite incident as required by paragraph 10 of the 1995 Agreement.  Mercado claims that such breaches were material breaches and he elected to terminate the Agreement as set out in paragraphs 12(a)(ii) and 12(a)(iii) of the Agreement, as well as sue for damages.  Under paragraphs 12(a)(ii) and 12 (a)(iii), Mercado had the obligation to give written notice to the Bart Group of any material breach of the 1995 Agreement and of any failure to pay paragraph 6(c) and its subsections compensation and to give the Bart Group 10 days and 15 days, respectively, to cure, before Mercado could elect to terminate the 1995 Agreement.

To prevail on its two breach of the 1995 Agreement claims, Mercado/Astromundo must prove by the greater weight of the evidence that on the breach of the indemnification provision of the 1995 Agreement that:

(1)     Bakula/Bart Group breached paragraph 10 of the 1995 Agreement by failing to indemnify Mercado for the Hematite damages; and

(2)     that such failure to pay was a material breach, as that term has been defined in these instructions, of the 1995 Agreement; and

(3)     that Mercado/Astromundo gave Bakula notice of this breach and that Bakula/Bart Group did not cure the breach within 10 days of the written notice;

16

On the breach of the payment provision of paragraph 6(c) of the Agreement that:

    (1)    that Bakula/Bart Group breached paragraph 6(c) of the 1995 Agreement by failing to make compensation payments within 60 days of the date the payments were due; and

    (2)    that Mercado/Astromundo gave written notice to Bakula/Bart Group that compensation was 60 days past due and 15 days to make payment or justify non-payment; and

    (3)    that Bakula/Bart Group did not pay or justify the non-payment.

If you find that Mercado/Astromundo has proven all of these facts, as to either or both breaches, by the greater weight of the evidence, then you must find that Mercado properly terminated the 1995 Agreement.

17

Mercado and Astromundo's last claim is that Bart Enterprises International, Ltd. violated what is called a "fiduciary" duty or obligation that they owed to Mercado/Astromundo.

A "fiduciary" obligation exists when two people join together for a common purpose and one person in the relationship places special trust and confidence in the other person, namely the fiduciary, relying upon the fiduciary to exercise discretion or expertise in acting for the other person in the relationship; and the fiduciary knowingly accepts that trust and confidence and thereafter undertakes to act on behalf of the other person by exercising the fiduciary's own discretion and expertise.

Of course, the mere fact that a business relationship arises between two persons does not mean that either owes a fiduciary obligation to the other. If one person engages or employs another and thereafter directs or supervises or approves the other's actions, the person so employed is not a fiduciary. Rather, as previously stated, it is only when one party places, and the other party accepts, a special trust and confidence - - usually involving the exercise of professional expertise and discretion - - that a fiduciary relationship comes into being.

When one person does undertake to act for another in a fiduciary relationship, the law forbids the fiduciary from acting in any manner adverse or contrary to the interests of the other party, or from acting for the fiduciary's own benefit in relation to the subject matter of their relationship. The fiduciary thus has a responsibility to disclose any conflicts between the fiduciary's interests and the other party's interests which might make the fiduciary act in the fiduciary's own best interest at the expense or the detriment of the other party. The party relying on the fiduciary is entitled to the best efforts of the fiduciary on the other party's behalf, and the fiduciary must exercise skill, care and diligence when acting on behalf of the party who is trusting the fiduciary.

When the fiduciary acts within the agreed fiduciary relationship, the fiduciary is required to make truthful and complete disclosures to the party to whom a fiduciary obligation is owed, and the fiduciary is forbidden to obtain an unreasonable advantage at the other party's expense.

Mercado/Astromundo assert that a fiduciary relationship existed between Mercado/Astromundo and Bart Enterprises International, Ltd. because the parties agreed, outside of the 1995 Agreement, to pursue the common purpose of promoting Mercado's name, likeness, and image, and as part of this agreement Bart Enterprises International, Ltd. would use its professional expertise and discretion to develop revenues from such promotion for both parties and that Mercado would rely upon and trust Bart Enterprises International, Ltd. to act in Mercado's best interest in this regard.

In order to recover on this claim Mercado/Astromundo must  prove each of the following facts by a preponderance of the evidence:

First:   That a "fiduciary" relationship existed between the parties (as that term has been defined in this instruction);

Second: That the fiduciary relationship arose from a relationship between Mercado/Astromundo and Bart Enterprises International, Ltd. that was separate and apart from the relationship created by the 1995 Agreement.

Third:  That Bart Enterprises International, Ltd. violated that fiduciary obligation by engaging in self-dealing and obtaining benefits not shared with Mercado and Astromundo; and

Fourth:  That Mercado and Astromundo suffered monetary losses as a proximate result of that violation of the fiduciary obligation.

For monetary losses to be the proximate result of an act or course of dealing, it must be

shown that the violation of the fiduciary obligation played a substantial part in causing or bringing about the monetary losses, and that, except for such conduct, the monetary losses would not have occurred.

In this case you have been permitted to take notes during the course of the trial, and most of you-perhaps all of you-have taken advantage of that opportunity and have made notes from time to time.

You will have your notes available to you during your deliberations, but you should make use of them only as an aid to your memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence or the lack of evidence; and neither should you be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.

Any verdict you reach in the jury room must be unanimous.  In other words, to return a verdict you must all agree.  Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong.  But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are the judges–judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

[Explain Verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the court security officer who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.